# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

PRECISION PRESS, INC., d/b/a
ANDERSON BROTHERS PRINTING
COMPANY,

        Plaintiff,

vs.

MLP U.S.A., INC.,

        Defendant.

No. C09-4005-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION TO
DISMISS, OR ALTERNATIVELY,
TO STAY PENDING ARBITRATION**

_____

## TABLE OF CONTENTS

**1. INTRODUCTION** ........................................... 2
    **A Factual Background** ................................... 2
    **B. Procedural Background** ................................ 5

**II. LEGAL ANALYSIS** ....................................... 6
    **A. Rule 12(b)(1) Challenges to Jurisdiction** ............... 6
    **B. General Principles Governing Arbitration** .............. 10
    **C. Analysis** ............................................ 13
        **1. Does state or federal law apply?** ................. 13
        **2. Does the FAA apply?** ............................. 17
        **3. Did the parties agree to arbitrate this dispute?** .... 19
        **4. Dismissal or stay?** .............................. 22

**III. CONCLUSION** ......................................... 24

# 1. INTRODUCTION

## A  Factual Background

This case comes before the court on defendant MLP U.S.A., Inc.'s ("MLP") pre-answer Federal Rule of Civil Procedure 12(b)(1) Motion To Dismiss, or Alternatively, To Stay Pending Arbitration (docket no. 11).  Therefore, the following factual background is based on the allegations in the Complaint and, where necessary, such other facts, disputed and undisputed, pertinent to the present controversy as appear in the parties' briefing of defendant MLP's Motion To Dismiss, or Alternatively, To Stay Pending Arbitration.  The present record does not, however, permit the court to make any findings to resolve factual disputes.[1]

Plaintiff Precision Press, Inc., d/b/a Anderson Brothers Printing Company ("Anderson Brothers"), is an Iowa corporation with its principle place of business in Sioux City, Iowa.  Anderson Brothers is in the business of printing paper products for customers throughout the upper Midwest.  Defendant MLP is a Delaware corporation with its principle place of business in Lincolnshire, Illinois.  MLP is in the business of selling and servicing commercial sheetfed, newspaper, and web offset presses manufactured by Mitsubishi Heavy Industries, Ltd. ("Mitsubishi").

---

[1] MLP's motion raises the enigmatic question of whether motions to dismiss based on an arbitration clause should properly be brought as motions under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).  MLP moves for dismissal of the Complaint pursuant to Rule 12(b)(1).  Nonetheless, both parties have attached documents to their briefs, including the sales agreement between the parties containing the arbitration clause at the center of MLP's motion. These circumstances would ordinarily require the court to treat MLP's motion as being brought under Rule 12(b)(6).  Neither party, however, has objected to the attached documents, the court's consideration of those documents in ruling on MLP's motion, or the court permitting MLP to petition for arbitration via a 12(b)(1) motion to dismiss.  Because neither party objects, the court will proceed in such manner.

Early in 2007, Anderson Brothers began searching for a "perfecting" press which would permit it to print and apply a UV coating to both sides of a sheet of paper in a single pass through the press, thereby allowing Anderson Brothers to increase its production capacity. Upon learning that Anderson Brothers was in the market for a "perfecting" press, Mitsubishi solicited Anderson Brothers, claiming to have a printing press which would meet Anderson Brothers's requirements. Following a demonstration, Anderson Brothers agreed to purchase a Mitsubishi 3000R-8CC-XXX Press from MLP.

On March 26, 2008, Anderson Brothers signed a Sales Agreement drafted by MLP. In its signed copy, however, Anderson Brothers made a number of handwritten changes to the contract. One of the handwritten changes, in pink highlighter, was a " + Iowa" notation at the end of paragraph 13(g).[2] Based on these handwritten changes, MLP drafted Amendment #1, dated April 18, 2008. The handwritten notation " + Iowa" at the end of paragraph 13(g), however, was not added to either the Sales Agreement or Amendment #1. On April 23, 2008, MLP executed both the Sales Agreement as well as Amendment #1. Anderson Brothers executed Amendment #1 on the same date.

The Sales Agreement contains an arbitration clause which provides:

> Except for Seller's right to seek collection of payments due or replevin of the Equipment referenced herein in accordance with its security interest in the event of Purchaser's failure to provide for return of the same in violation of this Agreement, all disputes and claims arising out of or in any way related to this Agreement, or arising in connection with this Agreement and all disputes and claims regarding any alleged defects in the

---

[2] The pink highlighter is so light that it did not appear in the original scanned copy of plaintiff's Exhibit 3, the Sales Agreement with handwritten changes, filed with the court. Following oral argument, Anderson Brothers provided the court with a copy in which the " + Iowa" handwritten change is visible.

> Equipment shall be resolved exclusively by final and binding arbitration conducted in Chicago, Illinois, pursuant to the American Arbitration Association's Model Commercial Arbitration Rules. The arbitration shall be before a panel of three (3) arbitrators. The arbitration opinion and award shall be final and binding upon the parties and enforceable by any court of competent jurisdiction. Seller and Purchaser shall share equally all costs of arbitration (except their own attorneys' fees).

Sales Agreement at ¶ 12 (Defendant's Ex. A). Among the Sales Agreement's miscellaneous provisions is a severability clause, which states: "If any term of condition or part of this SALES AGREEMENT is held invalid, the remaining terms and conditions of this SALES AGREEMENT shall not be affected thereby." Sales Agreement at ¶ 13(b) (Defendant's Ex. A). Also found among the Sales Agreement's miscellaneous provisions is a choice of law clause, which provides that: "This Contract Shall be construed in accordance with the laws of the state of Illinois." Sales Agreement at ¶ 13(g) (Defendant's Ex. A).

On July 9, 2008, MLP began installation of the Mitsubishi Diamond 3000R press. Installation was completed in early September 2008, and training commenced on September 5, 2008. Anderson Brothers alleges that the Mitsubishi trainers had difficulties with the press immediately, including continuous mechanical issues, unacceptable color, unacceptable registration, unacceptable consistency and excessive curl. Anderson Brothers also alleges that it told MLP's sales personnel about the problems it was experiencing with the Mitsubishi Diamond 3000R press and demanded that the problems be remedied by the end of September 2008, but MLP failed to do so. Anderson Brothers further alleges that it has experienced continuous problems with the press, including the following: uncontrollable ink and water balance; color variation, scumming and toning issues;

blackening of water during operation; front, side and sheet fit registration problems; curling; paper being thrown into rollers; sheets being ripped off on the blankets required for printing during operation; ink misting and ink piling up on the metering roller; failure of the UV lights to perform on a consistent basis or dry ink in an appropriate fashion; errors with the drive motor; errors on the sheet scanner; excessive make ready time and changeovers from one job to the next; inability to run the press at the rated speed of 11,000 sheets per hour in the perfecting mode.

During the week of November 8, 2008, Anderson Brothers permitted MLP technicians to attempt to remedy the problems it was having with the press. Anderson Brothers alleges that MLP has been unable to resolve the problems. On November 28, 2008, Anderson Brothers gave timely notice to MLP that it was rejecting the press because of its alleged non-conformity with the representations made by MLP and the terms of the Sales Agreement.

## B. Procedural Background

Anderson Brothers filed the present action on January 20, 2009, asserting diversity jurisdiction and sufficient amount in controversy pursuant to 28 U.S.C. § 1332(a). Count I of Anderson Brothers's Complaint seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the Sales Agreement is null and void for failure of its essential purpose. In Count II, Anderson Brothers asserts a claim for breach of contract, alleging that the Mitsubishi Diamond 3000R press did not perform as represented and that MLP failed to remedy the press's performance and mechanical problems.

Before answering Anderson Brothers's Complaint, MLP filed its Motion To Dismiss, or Alternatively, To Stay Pending Arbitration. In its motion, MLP asserts that given the arbitration clause in the Sales Agreement, this court lacks subject matter

jurisdiction and requests dismissal of this case pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, MLP requests that the court issue an order compelling arbitration and staying this action pending completion of the arbitration proceedings. Anderson Brothers filed a timely resistance to MLP's motion in which it asserts, *inter alia*, that the Federal Arbitration Act ("FAA") does not govern this dispute and that the current case falls outside the scope of the Sales Agreement's arbitration clause. MLP has, in turn, filed a timely reply brief.

The court held telephonic oral arguments on MLP's motion on May 26, 2009. At the oral arguments, plaintiff Anderson Brothers was represented by Jeff W. Wright and Jill A. Finken, who argued, of Heidman Law Firm, Sioux City, Iowa. Defendant MLP was represented by Gary D. Santella, who argued, of Masuda, Funal, Eifert & Mitchell, Ltd., Chicago, Illinois, and Daniel Hartnett of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett & Storm, P.C., Sioux City, Iowa. Counsel were exceptionally well prepared and made spirited and informative arguments on the issues which were of substantial assistance to the court in resolving the pending matter. The court turns first to the standards applicable to motions to dismiss and, then, to the legal analysis of the merits of defendant MLP's motion, namely whether there is a binding agreement to arbitrate that requires a dismissal or stay of this action.

## II. LEGAL ANALYSIS

### A. Rule 12(b)(1) Challenges to Jurisdiction

A motion attacking the court's subject-matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion can either attack the complaint's claim of jurisdiction on its face or it can attack the factual basis for jurisdiction. *Titus v.*

*Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir. 1982). . . .
>
> If the [defendant] wants to make a factual attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn* [*v. United States*], 918 F.2d [724,] 730 (citing *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)).

*Id*.

In *Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990), the Eighth Circuit Court of Appeals provided an exhaustive discussion of the procedures and requirements for determination of a 12(b)(1) motion to dismiss.

> The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the

majority of circuits that have held to the contrary. . . .
[Citations omitted.]

The reason for treating a 12(b)(1) motion differently than a
12(b)(6) motion, which is governed by Rule 56 when matters
outside the pleadings are considered, "is rooted in the unique
nature of the jurisdictional question." *Williamson* [*v. Tucker*
], 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied*, 454 U.S. 897
(1981)]. It is "elementary," the Fourth Circuit stated, that a
district court has "broader power to decide its own right to
hear the case than it has when the merits of the case are
reached." *Id.* Jurisdictional issues, whether they involve
questions of law or of fact, are for the court to decide. *Id.*
Moreover, because jurisdiction is a threshold question, judicial
economy demands that the issue be decided at the outset rather
than deferring it until trial, as would occur with denial of a
summary judgment motion.

*Osborn*, 918 F.2d at 729.

The court in *Osborn* found the distinction between facial and factual attacks on the

complaint under 12(b)(1) to be critical. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*,

613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980), and *Mortensen v. First*

*Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The court stated that:

[i]n the first instance, the court restricts itself to the face of the
pleadings, and the non-moving party receives the same
protections as it would defending against a motion brought
under Rule 12(b)(6). The general rule is that a complaint
should not be dismissed "'unless it appears beyond doubt that
the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief.'" In a factual attack, the
court considers matters outside the pleadings, and the
non-moving party does not have the benefit of 12(b)(6)
safeguards.

*Id*. at 729 n.6 (citations omitted); *see Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) ("A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) which is limited to a facial attack on the pleadings is subject to the same standard as a motion brought under Rule 12(b)(6)."). A factual challenge to jurisdiction under 12(b)(1) is unique:

> [H]ere the trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P.. 56. Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Osborn*, 918 F.2d at 730 (quoting *Mortensen*, 549 F.2d at 891); *see Faibisch v. University of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) (noting that "[w]hen a district court engages in a factual review, it inquires into and resolves factual disputes."). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of such a hearing, "'any rational mode of inquiry will do.'" *Osborn*, 918 F.2d at 730 (quoting *Crawford*, 796 F.2d at 929).

> Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. [*Crawford*, 796 F.2d at 929.] The only exception is in instances when the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id*.

*Id*. In the present case, the court concludes that defendant MLP has made a factual challenge to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1). However, neither party has asked for an evidentiary hearing on the issue. Rather, defendant MLP has provided the court with a copy of the Sales Agreement and Amendment #1 to that agreement, and Anderson Brothers has supplied the court with other documents related to its purchase of the press.

## B. General Principles Governing Arbitration

Congress enacted the FAA to abolish "the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts. . . ." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("To over come judicial resistance to arbitration, Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16."); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974) (noting that FAA enactment "revers[ed] centuries of judicial hostility to arbitration agreements"). The United States Supreme Court has recognized that the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 128 S. Ct. 978, 981 (2008); *see Buckeye Check Cashing, Inc.*, 546 U.S. at 444; *Gilmer*, 500 U.S. at 25; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.* 473 U.S. 614, 625 (1985); *Southland Corp. v. Keating,* 465 U.S. 1, 16 (1984). A primary goal of the FAA was to "'place [arbitration] agreements upon the same footing as other contracts." *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 270-72 (1995) (quoting *Volt Information. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989)). The Eighth Circuit Court of Appeals has observed that the FAA comprises a "statutory scheme for effectuating the federal policy of encouraging arbitration as a less costly and less complicated alternative to litigation." *Morgan v. Smith, Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir. 1984).

Sections two through four of the FAA are key to the present motion. Section two provides that arbitration agreements contained in contracts involving maritime transaction or commerce are "valid, irrevocable, and enforceable."[3] 9 U.S.C. § 2. As the Supreme Court observed last year, "Section 2 'declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner." *Preston*, 128 S. Ct. at 983 (quoting *Southland Corp.*, 465 U.S. at 10); *see Buckeye Check Cashing, Inc.*, 546 U.S. at 444 ("Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). Section three empowers federal courts to stay proceedings of issues referable to arbitration.[4] *Id.* § 3. Section four directs

---

[3]Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

[4]Section 3 of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the

(continued...)

courts, in certain circumstances, to compel the parties to arbitration pursuant to the terms of their written arbitration agreement.[5] *Id.* § 4.

When considering a motion to compel arbitration under the FAA, a court employs a two-step analysis. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004); *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 679 (8th Cir. 2001); *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001); *Daisy Mfg. Co., Inc. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994) (citing *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)). First, the court must determine whether a valid agreement to arbitrate exists between the parties. *URS Corp.*, 377 F.3d at 871; *Gannon*, 262 F.3d at 679; *Werries*, 253 F.3d at 1085; *Daisy Mfg. Co., Inc.*, 29 F.3d at 392. Second, the court must determine whether the specific dispute or disputes fall within the

---

[4](...continued)

> parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

[5]Section 4 of the FAA states in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

scope of that agreement. *URS Corp.*, 377 F.3d at 871; *Gannon*, 262 F.3d at 679; *Werries*, 253 F.3d at 1085; *Daisy Mfg. Co., Inc.*, 29 F.3d at 392. In making these determinations, the court must be mindful that the FAA's "provisions manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U.S. at 25 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). If these requirements are met, the FAA allows the court to stay proceedings and compel the parties to arbitrate. However, in a case where the parties have agreed that their arbitration agreement will be governed by state law, state arbitration law is not pre-empted by the FAA. *Volt Information. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 470-71 (1989).

## C. Analysis

### 1. Does state or federal law apply?

The first inquiry requires the court to answer the threshold question of whether state law or the federal law applies—a question hotly disputed by the parties. MLP argues that the Sales Agreement's arbitration clause is governed by federal law, the FAA. Anderson Brothers contends that state law should govern because of the parties' incorporation of a choice of law clause in paragraph 13(g) of the Sales Agreement. Eighth Circuit precedent, however, does not support that proposition. In *UHC Management Co. v. Computer Sciences, Corp.*, 148 F.3d 992, 996-97 (8th Cir. 1998), discussing Supreme Court precedent, including the decision in *Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52 (1995), relied upon by Anderson Brothers, the Eighth Circuit concluded it "will not interpret an arbitration agreement as precluding the application of the FAA unless the parties' intent that the agreement be so construed is abundantly clear." *UHC Mgmt.,* 148 F.3d at 996-97; *see Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 729 n.

9 (8th Cir. 2001) ("The construction of an agreement to arbitrate is governed by the FAA unless the agreement expressly provides that state law should govern.").

Like the Sales Agreement here, the contract at issue in *UHC Management* contained an arbitration clause that was silent as to whether state or federal arbitration law applied. *UHC Mgmt.*, 148 F.3d at 994. The contract in *UHC Management* did contain a choice-of-law clause, which stated, "[t]o the extent not preempted by ERISA or other federal law, this Agreement shall [be] governed by and construed under the laws of the State of Minnesota." *Id.* The Eighth Circuit Court of Appeals held that, from the language in the agreement, it could not divine an intent on the parties to preclude application of the FAA, noting:

> The agreement makes no reference to the Minnesota Uniform Arbitration Act or to Minnesota case law interpreting the allocation of powers between arbitrators and courts. Moreover, the choice-of-law clause itself specifically provides that Minnesota law must yield whenever preempted by federal law, which cuts against the argument that the parties intended that the FAA not apply.

*Id.* at 997.

The choice of law clause in the Sales Agreement here is even more generic than the choice of law clause addressed in *UHC Management*, providing only that: "This Contract Shall be construed in accordance with the laws of the state of Illinois."[6]      Sales

---

[6]Anderson Brothers argues that its inclusion of the handwritten "+ Iowa" notation at the end of paragraph 13(g) in the copy of the Sales Agreement draft it signed on March 26, 2008, became, under the U.C.C. § 2-207's "battle of the forms" provision, part of the contract. Both Iowa and Illinois have adopted U.C.C. § 2-207. *See* Iowa Code § 554.2207; 810 Ill. Comp. Stat. 5/2-207. Section 2-207, as codified at 810 Ill. Comp. Stat. 5/2-207, provides:

(continued...)

       (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

       (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

           (a) the offer expressly limits acceptance to the terms of the offer;
           (b) they materially alter it; or
           (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

       (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

810 ILL. COMP. STAT. 5/2-207. This provision, however, is inapplicable here since the parties both signed a different draft of the Sales Agreement, along with Amendment #1, at some point after the handwritten notations were made by Anderson Brothers. *See Salco Distribs., L.L.C. v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *3 (MD. Fla. Feb. 22, 2006) (holding that § 2-207 was inapplicable where parties "expressly adopted a particular writing as their Agreement."). Accordingly, the Sales Agreement signed by both parties, along with Amendment #1, represents the parties' mutual

(continued...)

Agreement at ¶ 13(g) (Defendant's Ex. A). The choice of law clause here does not even state that it is governed by Illinois law, only that it is to "construed in accordance" with Illinois law. Moreover, the Sales Agreement makes absolutely no reference to the Illinois Uniform Arbitration Act. Indeed, the opposite is true. Instead of referring to state law or state rules, the Sale Agreement's arbitration clause states that arbitration will be conducted "pursuant to the American Arbitration Association's Model Commercial Arbitration Rules." Such a generic choice-of-law clause, that is utterly silent regarding state arbitration rules governing the agreement, as a matter of law, does not make the parties' intent to have federal courts apply state arbitration law "abundantly clear." *UHC Mgmt.,* 148 F.3d at 997; *see P.R. Tel. Co. v. U.S. Phone Mfg. Corp.,* 427 F.3d 21, 29 (1st Cir. 2005) (holding that "every circuit that has considered the question . . . [has] held that the mere inclusion of a choice-of-law clause within the arbitration agreement is insufficient to indicate the parties' intent to contract for the application of state law concerning judicial review of awards"), *cert. denied,* 126 S. Ct. 1785 (2006), *rev'd on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 128 S. Ct. 1396 (2008); *Jacada, Ltd. v. Int'l Mktg. Strategies, Inc.,* 401 F.3d 701, 711-12 (6th Cir. 2005) (holding that generic choice-of-law provision did "not unequivocally suggest an intent to displace the default federal standard"), *rev'd on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 128 S. Ct. 1396 (2008); *Sovak v. Chugai Pharm. Co.,* 280 F.3d 1266, 1270 (9th Cir.) ("[A] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration."), *cert. denied,* 123 S. Ct.

---

[6](…continued)

understanding as to the terms of the contract between the parties. The Sales Agreement's choice of law clause provides that: "This Contract Shall be construed in accordance with the laws of the state of Illinois." Sales Agreement at ¶ 13(g) (Defendant's Ex. A).

114 (2002); *Roadway Package Sys. v. Kayser,* 257 F.3d 287, 288-89 (3d Cir. 2001) ("We hold that a generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default regime."), *rev'd on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008); *Porter Hayden Co. v. Century Indemn. Co.,* 136 F.3d 380, 382 (4th Cir. 1998) ("[A]bsent a clearer expression of the parties' intent to invoke state arbitration law, we will presume that the parties intended federal arbitration law to govern the construction of the Agreement's arbitration clause."). As the Sixth Circuit Court of Appeals has noted:

> Most contracts include a choice-of-law clause, and, thus, if each of these clauses were read to foreclose the application of the substantive law enacted by Congress in the FAA, the FAA would be applicable in very few cases. Such an interpretation of the FAA is simply not viable, as it would effectively emaciate the Act itself.

*Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926, 938 (6th Cir. 1998). Accordingly, because it is not "abundantly clear" that the parties intended to invoke state arbitration law over federal law, the court will not read the Sales Agreement as precluding the application of the FAA.

This conclusion, however, still leaves open the issue of whether the FAA applies to the Sales Agreement. Therefore, the court now turns to consider whether the FAA applies the Sales Agreement, and, if so, whether the existing dispute falls under the coverage of the agreement.

### 2.     *Does the FAA apply?*

The next inquiry requires the court to answer the question of whether the FAA applies to this matter. Section two of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by

17

> arbitration a controversy thereafter arising out of such contract
> or transaction, or the refusal to perform the whole or any part
> thereof, or an agreement in writing to submit to arbitration an
> existing controversy arising out of such a contract, transaction,
> or refusal, shall be valid, irrevocable, and enforceable, save
> upon such grounds as exist at law or in equity for the
> revocation of any contract.

9 U.S.C. § 2. The statute sets forth a two-fold inquiry: (1) is the arbitration agreement written?; and, if so (2) is it part of a maritime transaction or a transaction involving interstate commerce? As to the first inquiry, there is no contention that the arbitration clause was not written. Therefore, the first requirement is met.

The second inquiry, specifically whether the Sales Agreement's arbitration clause was part of a transaction involving interstate commerce, cannot be contested either. The Supreme Court has discussed the interpretation of the "involving commerce" requirement of § 2, observing:

> We have interpreted the term "involving commerce" in the
> FAA as the functional equivalent of the more familiar term
> "affecting commerce"—words of art that ordinarily signal the
> broadest permissible exercise of Congress' Commerce Clause
> power. *Allied-Bruce Terminix Cos.*, 513 U.S. at 273-74, 115
> S. Ct. 834. Because the statute provides for "the enforcement
> of arbitration agreements within the full reach of the
> Commerce Clause," *Perry v. Thomas*, 482 U.S. 483, 490, 107
> S. Ct. 2520, 96 L. Ed. 2d 426 (1987), it is perfectly clear that
> the FAA encompasses a wider range of transactions than those
> actually "in commerce"—that is, "within the flow of interstate
> commerce," *Allied-Bruce Terminix Cos.*, *supra*, at 273, 115 S.
> Ct. 834 (internal quotation marks, citations and emphasis
> omitted). . . . . Congress' Commerce Clause power "may be
> exercised in individual cases without showing any specific
> effect upon interstate commerce" if in the aggregate the
> economic activity in question would represent "a general

practice . . . subject to federal control." *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236, 68 S. Ct. 996, 92 L. Ed. 2d 1328 (1948). *See also Perez v. United States*, 402 U.S. 146, 154, 91 S. Ct. 1357, 28 L. Ed. 2d 686 (1971); *Wickard v. Filburn*, 317 U.S. 111, 127-28, 63 S. Ct. 82, 87 L. Ed. 122 (1942). Only that general practice need bear on interstate commerce in a substantial way. *Maryland v. Wirtz*, 392 U.S. 183, 196-97, n.27, 88 S. Ct. 2017, 20 L. Ed. 2d 1020 (1968); *NLRB v. Jones & Lauhglin Steel Corp.*, 301 U.S. 1, 37-38, 57 S. Ct. 615, 81 L. Ed. 893 (1937).

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). In light of the Supreme Court's discussion, it is evident that the Sales Agreement clearly does "implicate commerce" as required for application of the FAA. The Sales Agreement involves the sale of a Japanese made press by an Illinois corporation to an Iowa corporation. Thus, the transaction and the accompanying payments called for in the Sales Agreement necessarily implicate "commerce" as contemplated by § 2 of the FAA. Having found the FAA applicable, the court now turns to a determination of whether the parties agreed to arbitrate the issue before the court.

### 3. *Did the parties agree to arbitrate this dispute?*

The court must now turn to the issue of whether the Sales Agreement's arbitration clause constituted an agreement to arbitrate the matters at issue in this litigation. *See AT & T Tech., Inc. v. Communication Workers,* 475 U.S. 643, 649-50 (1986) (noting that whether the parties agreed to arbitrate an issue is a question for the court and not the arbitrator to decide); *International Ass'n of Bridge, Structural, Ornamental and Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. and Const. Products, Inc.*, 359 F.3d 954 (8th Cir. 2004) ("whether the parties have a valid arbitration agreement that binds them is a question for judicial determination") (citing *First Options of Chi., Inc. v.*

*Kaplan*, 514 U.S. 938, 943-46 (1995)); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 833-34 (8th Cir. 1997) (considering whether the parties agreed to arbitrate); *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694 (8th Cir. 1994) (noting that before a party can be compelled to arbitrate, the district court must determine whether a valid agreement to arbitrate exists). As the FAA contains no substantive rules for contract interpretation, state contract law governs the question. *Lyster v. Ryan's Family Steak House, Inc.*, 239 F.3d 943, 945-46 (8th Cir. 2001). In determining which state's contract law to apply, a federal court sitting in diversity applies the choice of law rules of the forum state—in this case, Iowa. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Schwan's Sales Enters., Inc. v. SIG Pack*, 476 F.3d 594, (8th Cir. 2007) (holding in diversity case that forum state's choice of law principles applied); *Prudential Ins. Co. of Am. v. Kamrath,* 475 F.3d 920, 924 (8th Cir. 2007) ("A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits."); *National Continental Ins. Co. v. Empire Fire & Marine Ins. Co.*, 157 F.3d 610, 612 n.4 (8th Cir. 1998) ("In diversity cases, the forum state's choice of law rules govern," citing *Klaxon Co.*, 313 U.S. at 496); *Colonial Ins. Co. of Cal. v. Spirco Envtl., Inc.*, 137 F.3d 560, 561-62 (8th Cir. 1998) ("'Federal district courts must apply the choice-of-law rules of the state in which they sit when jurisdiction is based on diversity of citizenship,'" quoting *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991)); *Penney v. Praxair, Inc.*, 116 F.3d 330, 333 n.4 (8th Cir. 1997) ("Sitting in diversity, a district court is bound to apply the choice of law rules of the state in which it sits. . . ."). Before applying the forum state's choice-of-law rules, however, a court must first determine whether a conflict exists. *Kamrath,* 475 F.3d at 924 (citing *Surgidev Corp. v. Eye Tech.,* Inc., 648 F. Supp. 661, 679-80 (D. Minn.1986), *aff'd*, 828 F.2d 452 (8th Cir. 1987)).

Here, the parties argue over which state law should apply, with Anderson Brothers arguing for Iowa law while MLP contends that Illinois law should govern. The court, however, need not decide whether Iowa law or Illinois law applies in this case because the outcome would be the same under either. *See Kamrath,* 475 F.3d at 924. Under either Iowa or Illinois law, where the language of the arbitration agreement is clear, and it is apparent that the dispute sought to be arbitrated falls within the scope of the arbitration clause, courts decide the arbitrability of the issue as a matter of law. *See Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill.2d 435, 445, 125 Ill.Dec. 281, 530 N.E.2d 439 (1988); *Lewis Cent. Educ. Ass'n v. Lewis Cent. Comm. Sch. Dist.*, 559 N.W.2d 19, 21 (Iowa 1997). Here, the Sales Agreement's arbitration clause broadly, but clearly and unambiguously, requires the parties to arbitrate, with two clear exceptions, "all disputes and claims arising out of or in any way related to this Agreement, or arising in connection with this Agreement and all disputes and claims regarding any alleged defects in the Equipment . . ." Sales Agreement at ¶ 12.

The parties differ over whether the dispute at the center of this lawsuit is arbitrable under the terms of the Sales Agreement. Anderson Brothers asserts that the central issues involved in this case are whether MLP is entitled to payments for the press and whether MLP will exercise its right of replevin. Anderson Brothers argues that since these issues plainly fall within the two exceptions contained in the arbitration clause that the complaint is excepted from the Sales Agreement. MLP, counters that it is undisputed that it has not sought collection of payments for the press or sought replevin. Therefore, neither of the exceptions contained in the arbitration clause are applicable. Rather, MLP argues that the Complaint alleges that the press was "defective", an issue which is specifically included within the scope of the Sales Agreement's arbitration clause and, as such, is arbitrable under the terms of the Sales Agreement. MLP's arguments on this issue are persuasive.

The Complaint is entirely silent on the subject of MLP's collection of payments for the press or its replevin of the press. Instead, it is clear from the text of the complaint that the dispute at the center of this lawsuit is Anderson Brothers's claim that the Mitsubishi Diamond 3000R press it purchased from MLP "was defective when installed and remains defective today." Complaint at ¶ 31. The Sales Agreement's arbitration clause clearly and unambiguously requires the parties to arbitrate "all disputes and claims regarding any alleged defects in the Equipment . . ." Sales Agreement at ¶ 12. Accordingly, the dispute at the center of this lawsuit falls squarely within the Sales Agreement's arbitration clause. Moreover, based on the press's alleged defects, Anderson Brothers request that the court declare the Sales Agreement null and void for failure of its essential purpose. In *Buckeye Check Cashing, Inc.,* 546 U.S. at 449, the Supreme Court held that under the FAA, a challenge to the validity of a contract containing an arbitration clause, rather than to the arbitration clause itself, should be determined in the first instance by the arbitrators. Consequently, here, where Anderson Brothers contests the validity of the contract as a whole, and not specifically the arbitration clause, the *Buckeye* decision holds that the validity of the Sales Agreement must be decided by the arbitrators. *See id.*; *see also Express Scripts, Inc. v. Aegon Direct Mktg.Servs., Inc.*, 516 F.3d 695, 700-01 (8th Cir. 2008) ("The *Buckeye* line of cases stands for the proposition that where the parties dispute the validity of their contract as a whole, but not the validity or existence of the arbitration provision, the arbitration provision is severed from the rest of the agreement and the issue of the contract's validity is decided by an arbitrator.").

### 4.    *Dismissal or stay?*

MLP requests that the court dismiss this case for lack of subject matter jurisdiction because all of the issues raised in this litigation must be submitted to arbitration. Alternatively, MLP requests that the court stay this proceeding and order Anderson

Brothers to submit to arbitration. There is a split in the federal courts of appeals on the issue of whether the dismissal of an action is permitted by the Federal Arbitration Act. *Compare Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."), and *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."), and *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that section three of the FAA "was not intended to limit dismissal of a case in the proper circumstances."), and *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that section three of the FAA does not limit a district court's authority to grant a dismissal of a case), with *Continental Cas. Co v. American Nat. Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005) ("We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright.") (citing *Tice v. American Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002)), and *Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 268-69 (3rd Cir. 2004) (holding that "the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."), and *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (holding that district court erred in dismissing case in which defendant moved for a stay pending arbitration under 9 U.S.C. § 3, and should have instead entered stay). The Eighth Circuit Court of Appeals has not yet weighed in on the issue. The court concludes that staying the case is the approach most in keeping with the language of the FAA.

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Accordingly, the plain text of § 3 provides a district court no authority to dismiss a case where one of the parties applies for a stay pending arbitration. Rather, § 3 declares, without exception, that whenever suit is brought on an arbitrable claim, the court "shall" upon application "stay" the case until arbitration has been completed. Accordingly, the court concludes that it is obligated, under § 3 of the FAA, to stay this litigation and order the parties to arbitrate this dispute.

## III. CONCLUSION

For the reasons discussed above, the court finds that this lawsuit should be stayed and the dispute arbitrated according to the terms of the arbitration clause contained in the Sales Agreement. Therefore, defendant MLP's Motion To Dismiss, or Alternatively, To Stay Pending Appeal is **granted**, as follows:

1.     The parties are **ordered to arbitrate**, pursuant to the arbitration clause in ¶ 12 of the Sales Agreement; and

2.     The proceedings in this court, on *all* issues, in their entirety, are **stayed** pending conclusion of arbitration.

**IT IS SO ORDERED.**

**DATED** this 1st day of June, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA