**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| PRECISION PRESS, INC., d/b/a ANDERSON BROTHERS PRINTING COMPANY, | |
| Plaintiff, | No. C09-4005-MWB |
| vs. | **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| MLP U.S.A., INC., | |
| Defendant. | |

———————————

**TABLE OF CONTENTS**

*1.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        *1.   Federal litigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        *2.   The arbitration award and post-arbitration proceedings* . . . . . 4
    *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        *1.   Arbitration panel's factual findings* . . . . . . . . . . . . . . . . . 6
        *2.   Arbitration panel's legal conclusions* . . . . . . . . . . . . . . . . 9

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *A.  Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *B.  Analysis of MLP's Breach of Contract Counterclaim* . . . . . . . . . . . . 14
        *1.   Collateral estoppel doctrine* . . . . . . . . . . . . . . . . . . . . . 15
        *2.   Whether collateral estoppel applies here* . . . . . . . . . . . . . . 16
            *a.   Valid and enforceable contract* . . . . . . . . . . . . . . 17
            *b.   Breach by Anderson Brothers* . . . . . . . . . . . . . . . 17
            *c.   Performance by MLP* . . . . . . . . . . . . . . . . . . . 17
            *d.   Resulting damages* . . . . . . . . . . . . . . . . . . . . . 19
    *C.  Is Summary Judgment Premature?* . . . . . . . . . . . . . . . . . . . . . . 20

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Yogi Berra might describe this case as "deja vu all over again."  *See* Yogi Berra, *Yogi-isms,* Yogi Berra Official Web Site, http://yogiberra.com/yogi-isms.html (last visited August 20, 2012).[1]  This is the third time this case, concerning the plaintiff's purchase of a printing press from the defendant,  has come before me, albeit on different, but related motions.  Originally, the parties crossed swords over whether I should compel them to arbitrate their dispute.   After compelling arbitration, the parties came before me again over whether I should confirm the arbitration award.  Having confirmed the arbitration award, the parties are before me yet again.  The dispute this time is over whether the arbitration award should be given collateral estoppel effect.

## 1.  INTRODUCTION AND BACKGROUND

Plaintiff Precision Press, Inc., d/b/a Anderson Brothers Printing Company ("Anderson Brothers"), is an Iowa corporation with its principle place of business in Sioux City, Iowa.  Anderson Brothers is in the printing business.  Defendant MLP U.S.A., Inc. ("MLP") is a Delaware corporation with its principle place of business in Lincolnshire, Illinois.  MLP sells and services commercial sheetfed, newspaper, and web offset presses manufactured by Mitsubishi Heavy Industries, Ltd. ("Mitsubishi").  Anderson Brothers purchased a Mitsubishi 3000R-8CC-XXX Press from MLP in 2008.   After the press's installation, a dispute arose between Anderson Brothers and MLP over the press's operation.  Anderson Brothers contends it had difficulties with the press immediately, reported the problems it was experiencing, but MLP was unable to remedy them. Anderson Brothers alleges that it gave timely notice to MLP that it was rejecting the press.

---

[1] *But see* Ralph Keyes, *Nice Guys Finish Seventh; Phrases, Spurious Sayings and Familiar Misquotations* 152 (1992) (observing that "although this [phrase] is commonly cited as a 'Berra-ism,' Yogi Berra denies ever saying it").

MLP contends Anderson Brothers failed to give it a reasonable amount of time to repair or replace the press, and the problems Anderson Brothers was experiencing did not breach the press's express warranty.

### A. Procedural Background

### 1. Federal litigation

Anderson Brothers filed the present action on January 20, 2009, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Count I of the Complaint seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the sales agreement is null and void for failure of its essential purpose. In Count II, Anderson Brothers asserts a claim for breach of contract, alleging that the press did not perform as represented and MLP failed to remedy the press's performance and mechanical problems.

Before answering the Complaint, MLP filed a Motion To Dismiss, or Alternatively, To Stay Pending Arbitration. MLP asserted a lack of subject matter jurisdiction due to an arbitration clause in the parties' sales agreement, and requested dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). Alternatively, MLP requested arbitration be ordered and this case stayed pending completion of the arbitration proceedings. Anderson Brothers filed a timely resistance to MLP's motion in which it asserted, *inter alia*, that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, does not govern this dispute and this case falls outside the scope of the sales agreement's arbitration clause. MLP, in turn, filed a timely reply brief. On June 1, 2009, I entered a memorandum opinion and order granting in part and denying in part MLP's motion. I concluded the sales agreement's arbitration clause was governed by the FAA and the parties agreed to arbitrate the issues involved in this litigation. I ordered the parties to arbitrate their dispute. The case was

stayed and the parties submitted their dispute to a panel of the American Arbitration Association for resolution.

### 2.    *The arbitration award and post-arbitration proceedings*

Arbitration occurred between June 21, 2010, and June 25, 2010, in Chicago, Illinois.  On July 26, 2010, the arbitration panel issued its written opinion and award, in favor of MLP.  Following the arbitration panel's award, on November 5, 2010, MLP filed its Motion to Confirm Arbitration Award requesting, pursuant to 9 U.S.C. § 9, that I confirm the arbitration award, enter judgment against Anderson Brothers in conformity with the arbitration award and dismiss Anderson Brothers's claims against it.  Also, on November 5, 2010, MLP filed its answer and counterclaim.  In it's counterclaim, MLP sought monetary damages and replevin, both of which were specifically excluded from the Sales Agreement's arbitration provision.[2]  Anderson Brothers resisted MLP's motion and

---

[2]The Sales Agreement's arbitration clause provides:

> **Except for Seller's right to seek collection of payments due or replevin of the Equipment referenced herein** in accordance with its security interest in the event of Purchaser's failure to provide for return of the same in violation of this Agreement, all disputes and claims arising out of or in any way related to this Agreement, or arising in connection with this Agreement and all disputes and claims regarding any alleged defects in the Equipment shall be resolved exclusively by final and binding arbitration conducted in Chicago, Illinois, pursuant to the American Arbitration Association's Model Commercial Arbitration Rules.  The arbitration shall be before a panel of three (3) arbitrators.  The arbitration opinion and award shall be final and binding upon the parties and enforceable by any court of competent jurisdiction.  Seller and Purchaser shall share equally all costs of arbitration (except

(continued…)

filed its own Motion to Vacate Arbitration Award.  MLP subsequently amended its Motion to Confirm Arbitration Award, which Anderson Brothers timely resisted.   On May 11, 2011, I granted MLP's motion, denied Anderson Brother's motion, and confirmed the arbitration award.  However, because the arbitration award did not resolve all issues raised in MLP's counterclaim, the case remained open.       On April 12, 2012, MLP moved for partial summary judgment on its counterclaim for monetary damages and requested dismissal of its counterclaim for replevin as being moot (docket no. 42).[3]  MLP contends that, under the doctrine of collateral estoppel, the issues and findings contained in the arbitration award are dispositive on all issues relating to its counterclaim for monetary damages from Anderson Brothers.  MLP, alternatively, contends that, under the "law of the case" doctrine,  my order confirming the arbitration award is also dispositve as to its counterclaim.  On May 7, 2012, Anderson Brothers resisted MLP's motion.  Anderson Brothers argues, *inter alia*, that the arbitration award should not be given collateral estoppel effect because the issues decided in arbitration  are not identical to the issues in MLP's breach of contract counterclaim.  For the same reason, Anderson Brothers also argues that law of the case doctrine is inapplicable.  Anderson Brothers, alternatively, argues that MLP's motion is premature because damages cannot be ascertained yet because MLP has not resold the press.  MLP has, in turn, filed a timely reply brief.

---

[2](…continued)
   their own attorneys' fees).

Sales Agreement ¶ 12 (emphasis added).

[3]Following the arbitration award, MLP repossessed the press.

### B.  Factual Background

The summary judgment record reveals the following undisputed facts.  Plaintiff Anderson Brothers is an Iowa corporation with its principal place of business in Sioux City, Iowa.  Anderson Brothers is in the printing business.  Defendant MLP is a Delaware corporation with its principal place of business in Lincolnshire, Illinois.  MLP sells and services commercial sheetfed, newspaper, and web offset printing presses manufactured by Mitsubishi.  In 2008, Anderson Brothers purchased a Mitsubishi 3000R-8CC-XXX Press from MLP.   After the press's installation, a dispute arose between Anderson Brothers and MLP over the press's operation.

On January 20, 2009, Anderson Brothers filed the present lawsuit against MLP. In Count I, Anderson Brothers sought a declaratory judgment that the sales agreement for the press was null and void for failure of its essential purpose.  In Count II, Anderson Brothers asserted a breach of contract claim, alleging that the press did not perform as represented and MLP failed to remedy the press's performance and mechanical problems. On June 1, 2009, based on an arbitration clause in the sales agreement, I ordered the parties to arbitrate their dispute.

### 1.    Arbitration panel's factual findings

On July 26, 2010, the arbitration panel issued its written opinion and award, in favor of MLP.  The arbitration award was based on Illinois law.  The arbitration panel made the following findings of fact:

MLP salesperson Mike Stock solicited Anderson Brothers's business.  Stock's oral representations concerning the press's capabilities were general and in the nature of "puffing."  He did not intentionally make any statements which he knew were false.

On March 26, 2008, Anderson Brothers and MLP executed a sales agreement for Anderson Brothers's purchase of a Mitsubishi 3000R-8CC-XXX Press (Serial No. 4582)

6

from MLP.   The sales agreement was amended on April 23, 2008.   The press was to be installed at Anderson Brothers's facility in Sioux City, Iowa.   The sales agreement stated a total purchase price of $3,898,000, less a $225,000 trade-in allowance for a net purchase price of $3,673,000.

The sales agreement contains, in relevant part, the following warranty language:

> 6.   Warranty and Warranty Disclaimer
>
> (a)   Seller warrants that the Equipment manufactured by Mitsubishi Heavy Industries, Ltd. (MHI) and sold hereunder will be designed and manufactured to conform within the specifications attached hereto, and will be free from defects in material and workmanship for a period of three (3) years from the date of "Start-Up" of the Equipment (See Schedule D). Seller's sole and exclusive liability under Seller's warranty for Equipment manufactured by Mitsubishi Heavy Industries, Ltd. (MHI) and sold hereunder and Purchaser's sole and exclusive remedy shall be for Seller to replace or repair, at its discretion, any defective equipment or part thereof.
>
> (b)   SELLER'S WARRANTY HEREIN IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, OR OTHERWISE CREATED UNDER APPLICABLE LAW INCLUDING, BUT NOT LIMITED TO, THE WARRANTY OF MERCHANTABILITY AND THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE.  IN NO EVENT SHALL SELLER BE LIABLE FOR SPECIAL, INCIDENTAL OR COLLATERAL

> DAMAGES, INCLUDING LOSS OF PROFITS, WHETHER OR NOT CAUSED BY OR RESULTING FROM THE SHIPMENT, DELIVERY, ERECTION, ASSEMBLY, INSTALLATION, NEGLIGENCE, OR ANY ACTION OF SELLER ARISING FROM OR RELATED TO THIS AGREEMENT.

Sales Agreement ¶ 6(a)-(b).  The press's performance specifications are set out in Schedule "B" and include the press's capability to use paper with a minimum thickness of .0016" at a pile height of 43" at a speed of 11,000 sheets per hour in perfecting mode.

The sales agreement also contains the following arbitration clause:

> Except for Seller's right to seek collection of payments due or replevin of the Equipment referenced herein in accordance with its security interest in the event of Purchaser's failure to provide for return of the same in violation of this Agreement, all disputes and claims arising out of or in any way related to this Agreement, or arising in connection with this Agreement and all disputes and claims regarding any alleged defects in the Equipment shall be resolved exclusively by final and binding arbitration conducted in Chicago, Illinois, pursuant to the American Arbitration Association's Model Commercial Arbitration Rules.  The arbitration shall be before a panel of three (3) arbitrators.  The arbitration opinion and award shall be final and binding upon the parties and enforceable by any court of competent jurisdiction.  Seller and Purchaser shall share equally all costs of arbitration (except their own attorneys' fees).

Sales Agreement ¶ 12. Among the sales agreement's miscellaneous provisions is a choice of law clause, which provides:  "This Contract Shall be construed in accordance with the laws of the state of Illinois."   Sales Agreement ¶ 13(g).

MLP shipped the press to Anderson Brothers on July 31, 2008.  Anderson Brothers experienced problems with the press, including unacceptable color, roller problems, and

8

excessive curl.  Anderson Brothers told MLP about the problems and demanded that they be remedied.  MLP sent its top technicians to Anderson Brothers's facility and directly consulted Mitsubishi about the press.  MLP's technicians made several modifications to the press but the results were inconsistent and the curl was still apparent.  The quality of the press's printing still did not meet Anderson Brothers's expectations.  MLP was willing to continue its attempts to correct the problems with the press when Anderson Brothers decided to permanently shut the press down on January 19, 2009.  MLP asked for, but was denied, the opportunity to perform  a Graphic Arts Technical Foundation ("GATF") test on the press after January 19, 2009.

### 2. Arbitration panel's legal conclusions

The arbitration panel determined that Anderson Brothers accepted the press, but attempted to revoke its acceptance.  The arbitration panel further concluded Anderson Brothers's attempted revocation was invalid because Anderson Brothers failed to give MLP an adequate and reasonable amount of time to replace or repair the equipment.  The arbitration panel found: (1) the parties' sales agreement was a valid, binding contract; (2) the press's performance in January 2009 did not breach any express warranty; and (3) Anderson Brothers did not have a right to assert implied warranties of merchantability and fitness for a particular purpose under the sales agreement.  The arbitration panel also rejected Anderson Brothers's claims of fraudulent misrepresentation and violations of the Illinois Consumer Fraud Act, explaining:

> In carefully reviewing the testimony, we find Mike Stock's representations concerning the capabilities of the Press were general and in the nature of "puffing."  For the most part, he merely agreed with the buyer's own expectations of what a perfecting press using UV printing could accomplish.

Anderson Brothers' own witnesses concede that Mike Stock did not intentionally make any statements he knew to be false. Furthermore, there were no material representations concerning "curl," "no use of spray powder," "pallet to pallet" or full loads. We believe that Anderson Brothers were swayed by its own investigation and due diligence, even in light of its initial skepticism.

Having found no support for any fraudulent or material misrepresentations, both counts VI and VII of the Third Amended Counterclaim fail.

Arbitration Award at 5.

The arbitration panel awarded the following:

1.     The Panel finds all issues in favor of Claimant MLP, Inc. and against Respondent Precision Press, doing business as Anderson Brothers;

2.     The Panel declares that Anderson Brothers is in default of the Sales Agreement dated March 26, 2008 for failure to pay sums due and owing thereunder;

2.     Anderson Brothers is hereby directed to permit MLP to repossess the Press, at MLP's expense, and to do nothing to interfere with such repossession. MLP shall conduct a sale of the Press in accordance with the Uniform Commercial Code, free and clear of liens, with the proceeds of sale to be credited against the contract price owed by Anderson Brothers;

3.     MLP is not liable for Fraudulent Misrepresentation or violation of the Illinois Consumer Fraud Act.

4.     Pursuant to Section 12 of the Sales Agreement, and Rule 43 of the Commercial Arbitration Rules of the American Arbitration Association (the "Association"),

> the parties shall share equally in the administrative fees
> and expenses of the Association totaling $13,500.00 and
> the compensation and expenses of the arbitrators
> totaling $106,960.24.  In addition, each party shall bear
> its own attorney fees.   Accordingly, MLP shall
> reimburse Anderson Brothers the sum of $250.00,
> representing that portion of said fees and expenses in
> excess of the apportioned costs previously incurred by
> Anderson Brothers.

> 5.    Any claim not expressly granted herein is denied.  This
> Award is submitted in satisfaction of all claims
> submitted to arbitration.

Arbitration Award at 6 (misnumbering in original).

On November 1, 2010, MLP took possession of the press pursuant to the arbitration award.  To date, MLP has not sold the press and continues to store it at its facilities.

## II.  LEGAL ANALYSIS

### A.  Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . .").  Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing

11

the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ––– U.S. –––, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

Therefore, I will apply these standards to MLP's Motion for Partial Summary Judgment.

### B.  Analysis of MLP's Breach of Contract Counterclaim

Under Illinois law, the elements for a breach of contract claim are: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.,* 351 Ill. App.3d 752, 286 Ill. Dec. 734, 814 N.E.2d 960, 967 (2004); *accord Henderson–Smith & Assocs. Inc. v. Nahamani Family Serv. Ctr., Inc.,* 323 Ill. App.3d 15, 27, 256 Ill. Dec. 488, 752 N.E.2d 33 (2001); *see  Reger Dev. L.L.C. v. National City Bank,* 592 F.3d 759, 764 (7th Cir. 2010) (quoting *First Colony Life Ins. Co.,* 351 Ill. App.3d 752, 286 Ill. Dec. 734, 814 N.E.2d at 967).[4]  A contract is valid and enforceable if:  (1) there is a valid offer and acceptance; (2) the terms of the contract are definite and certain; and (3) there is consideration.  *Zirp–Burnham, L.L.C. v. E. Terrell Assocs., Inc.,* 356 Ill. App.3d 590, 292 Ill. Dec. 289, 826 N.E.2d 430, 439 (Ill. App. Ct. 2005).

MLP argues that the factual findings and legal conclusions contained in the arbitration award satisfy each of the required elements for MLP's breach of contract claim. Anderson Brothers concedes that the arbitration award detailed the existence of a valid and enforceable agreement and default by Anderson Brothers.  However, Anderson Brothers argues that collateral estoppel does not apply because the issues decided in the arbitration award are not identical to the issues in MLP's breach of contract counterclaim. Specifically, Anderson Brothers argues that the arbitration award did not include findings on the remaining two breach of contract elements, substantial performance by MLP and resulting damages.  Before delving into whether the arbitration award considered all of the

---

[4]I will apply Illinois law under traditional choice of law rules and because the parties agree that Illinois law is applicable to the issues here.

required breach of contract elements, I will briefly review Illinois's collateral estoppel doctrine.

### 1.   *Collateral estoppel doctrine*

Under Illinois law, collateral estoppel applies "when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction."[5] *Nowak v. St. Rita High School,* 197 Ill.2d 381, 389–90, 258 Ill. Dec. 782, 757 N.E.2d 471, 477 (2001).   Collateral estoppel, also known as issue preclusion, applies where:

> (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Gumma v. White,* 216 Ill.2d 23, 295 Ill. Dec. 628, 833 N.E.2d 834, 843 (2005); *accord Nowak,* 197 Ill.2d 381, 258 Ill. Dec. 782, 757 N.E.2d at 478; *Long v. Elborno,* 397 Ill. App.3d 982, 337 Ill.Dec. 432, 922 N.E.2d 555, 562 (2010); *see Brown v. City of*

---

[5]Res judicata is distinguishable from collateral estoppel. "'The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent litigation between the same parties or their privies on matters found to be part of the same cause of action.'" *Frankel v. Otiswear, Inc.*, 216 Ill. App. 3d 204, 160 Ill. Dec. 1, 576 N.E.2d 955, 960 (1991) (quoting *Bismarck Hotel Co. v. Sutherland*, 175 Ill. App.3d 739, 744, 125 Ill. Dec. 15, 529 N.E.2d 1091 (1988)).   As the United States Supreme Court has explained:   "Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen,* 442 U.S. 127, 139 n.10 (1979).

*Chicago*, 599 F.3d 772, 774 (7th Cir. 2010).   Collateral estoppel applies to both determinations of law and fact. *Du Page Forklift Serv., Inc. v. Material Handling Servs.*, 195 Ill. 2d 71, 253 Ill. Dec. 112, 744 N.E.2d 845, 850 (2001); *People ex. rel Madigan v. Illinois Commerce Comm'n*, ---Ill. App. 3d ---, 359 Ill. Dec. 833, 967 N.E.2d 863, 870 (2012).  However, the Illinois Supreme Court has emphasized that "[c]ollateral estoppel is an equitable doctrine," and, as a result, even "where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Nowak,* 197 Ill. 2d 381, 258 Ill. Dec. 782, 757 N.E.2d at 478. "Generally, arbitration awards have the same collateral estoppel effect as court judgments." *Dearborn Maple Venture, L.L.C. v. SCI IL. Servs., Inc.*, ---Ill. App. 3d ---, 360 Ill. Dec. 469, 968 N.E.2d 1222, 1230 (2012); *see Peregrine Fin. Group, Inc. v. Martinez,* 305 Ill. App.3d 571, 238 Ill. Dec. 757, 712 N.E.2d 861, 867 (1999); *Taylor v. Peoples Gas Light & Coke Co.,* 275 Ill. App.3d 655, 211 Ill. Dec. 942, 656 N.E.2d 134, 139 (1995); *Rosee v. Board of Trade,* 43 Ill. App.3d 203, 1 Ill. Dec. 730, 356 N.E.2d 1012, 1036 (1976).  "[H]owever, exceptions exist where it appears that the arbitration proceeding was unfair or the result unreliable, or where giving the award preclusive effect would be incompatible with other legal or contractual policies." *Taylor,* 275 Ill. App.3d 655, 211 Ill. Dec. 942, 656 N.E.2d at 139.

## 2.     *Whether collateral estoppel applies here*

The parties do not dispute that the second and third requirements of collateral estoppel are satisfied here.  There was a final judgment on the merits in the arbitration, and Anderson Brothers was a party in the arbitration.  However, as discussed above, the parties do dispute whether the issues decided in the arbitration award are identical to the issues in MLP's breach of contract counterclaim.  Resolution of this dispute requires me

to analyze the issues raised in the arbitration award and determine whether they are identical to those in MLP's breach of contract counterclaim for purposes of collateral estoppel.

### a.     *Valid and enforceable contract*

The parties agree that the arbitration award contains a finding that a valid and enforceable contract exists between MLP and Anderson Brothers.  The arbitration award identifies the sales agreement entered by the parties and states "the Sales Agreement was a binding contract."  Arbitration Award at 1-2, App. at 42-43.  From this, I conclude the arbitration award establishes the first element of MLP's breach of contract counterclaim.

### b.     *Breach by Anderson Brothers*

The parties also agree that the arbitration award contained a finding that Anderson Brothers was in beach of the sales agreement.  The arbitration award bears this out, containing the following specific finding:  "The Panel declares that Anderson Brothers is in default of the Sales Agreement dated March 26, 2008 for failure to pay sums due and owing thereunder[.]"  Arbitration Award at 6, App. at 47.  Thus, I conclude that the arbitration award also establishes this element of MLP's breach of contract counterclaim.

### c.     *Performance by MLP*

The performance element of MLP's breach of contract counterclaim is disputed by the parties.   Anderson Brothers contends that the arbitration panel's findings are insufficient to satisfy the performance element of MLP's breach of contract counterclaim. Anderson Brothers argues the arbitration award did not address the issue of whether MLP performed all of its obligations under the agreement.  Anderson Brothers reasons that because MLP had not asserted its counterclaim at the time of arbitration, the arbitration panel had no reason to determine whether MLP had performed all of its obligations.  MLP

counters that the issues here and those before the arbitration panel are identical for the purposes of Illinois's collateral estoppel doctrine.

Whether MLP's performance is identical to an issue that was litigated in arbitration turns on whether "the fact must have been so in issue that it was necessarily decided by the court rendering the prior judgment." *Ganger v. Hendle,* 352 Ill. Dec. 447, ---Ill. App. 3d ---, 954 N.E.2d 307, 331 (2011).   The arbitration panel was tasked with determining, *inter alia*, whether MLP was in breach of the sales agreement.  This issue required the arbitration panel to determine both whether MLP was in breach of any express warranties for the press or was in breach for failing to remedy perceived flaws in the press.   Whether MLP was in breach of the sales agreement, the issue before the arbitration panel, is the mirror issue of the one before me, whether MLP has performed under the contract, since both issues require the same assessment of MLP's performance under the sales agreement. Thus, I turn to consider whether the arbitration award establishes MLP's substantial performance.

The arbitration panel found that the press's performance did not breach any express warranty, and that Anderson Brothers could not press claims for breach of implied warranty of merchantability and fitness for a particular purpose.   The arbitration panel also made the following finding:

> The Panel agrees that MLP expended great effort to meet Anderson Brothers' expectations to reduce curl and obtain acceptable color quality.  It agrees that MLP expended time, money and resources to continue to make adjustments in the grippers, the rollers, and other parts of the equipment.  Even assuming that the print quality of John Ward's last effort on January 19, 2009 did not meet Anderson Brothers' expectations of print quality and no curl, however, it is the Panel's conclusion that limiting MLP's efforts to replace or repair as of January 2009 was an unreasonable limitation on

> MLP's responsibilities to meet its obligations under the
> Contract.

Arbitration award at 3, App. at 44.  The arbitration panel went on to specifically find that:

> MLP clearly had not abandoned Anderson Brothers, nor could
> its conduct be considered "dilatory or careless and negligent."
> In fact, MLP was willing to continue its attempts and showed
> shock and dismay at Anderson Brothers' abrupt termination of
> the servicing in January 2009.

Arbitration award at 4, App. at 45.  The arbitration panel concluded that "Anderson Brothers is not entitled to a "declaration that MLP was in breach of contract." Arbitration award at 5, App. at 46.  From these findings of the arbitration panel, I have no difficulty concluding that the arbitration award establishes MLP's substantial performance of the sales agreement.   Thus, I conclude that the arbitration award establishes MLP's "substantial performance" element of its breach of contract counterclaim.

### d.    Resulting damages

As with the previous issue, Anderson Brothers argues that the arbitration award did not include findings regarding MLP's damages resulting from Anderson Brothers' breach of contract.  Anderson Brothers contends that, until the press is resold in a commercially reasonable manner, MLP's injury is not "fixed."  While MLP concedes that its damages are not yet fixed, MLP argues that it nonetheless has suffered an injury by not receiving the full contract price when due.

The arbitration award identified that "[t]he Sales Agreement called for a total purchase price of $3,898,000.00 less a trade-in allowance of $225,000.00 for a net purchase price of $3,673,000.00." Arbitration award at 2, App. at 43.  The arbitration award goes on to find that "Anderson Brothers is in default of the Sales Agreement dated March 26, 2008 for failure to pay sums due and owing thereunder[.]"  Arbitration award

at 6, App. at 47.  The arbitration award also discloses, *sub silentio*, that sums are still due and owing to MLP on the purchase price of the press.  This is clear from the arbitration award's direction that "MLP shall conduct a sale of the Press. . . with proceeds of the sale to be credited against the contract price."  Arbitration award at 6, App. at 47.  Because MLP has not been paid the amount due and owing on the press, the arbitration award establishes that it has suffered damages from Anderson Brothers's breach of the sales agreement.  Thus, I conclude that the arbitration award also establishes MLP's "resulting damages performance" element of its breach of contract counterclaim.

Therefore, I find that MLP has demonstrated that the issues raised here are identical to those raised in arbitration and that the doctrine of collateral estoppel applies.  Accordingly,  Anderson Brothers is collaterally estopped from relitigating the elements of MLP's breach of contract counterclaim, and MLP has established each element of its breach of contract counterclaim.

### C.  Is Summary Judgment Premature?

Anderson Brothers further argues that even if collateral estoppel applies here, the motion for summary judgment is premature until such time as the press is sold and I am able to make a determination as to whether the press was sold in a commercially reasonable manner.  MLP counters that it is not seeking a judgment as to damages but summary judgment only on Anderson Brothers's liability under the sales agreement.  Federal district courts are often asked to, and do, grant partial summary judgment on an issue of liability and leave damages for trial.  *See Westdale Const., Ltd. v. Kwasnik*, Civil No. 11-5701,  2012 WL 3133740, at *6 (D.N.J. July 32, 2012) (granting partial summary judgment on liability only); *Electrical Workers Pension Trust Fund of Local No. 58, IBEW v. Alpha Elec. & Eng'g, L.L.C.,* No. 11-15459, 2012 WL 2871758, at * 1 (E.D. Mich.

July 12, 2012) (granting motion for partial summary judgment as to liability only); *Hensarling v. Regions Bank*, No. 3:11CV149TSL-MTP, 2012 WL 2839687, at *6 (S.D. Miss. July 10, 2012) (same); *First Fin. Bank, N.S. v. Christensen*, 2012 WL 2789020, at *2 (D. Nev. July 9, 2012) (same); *US Investigations Servs. L.L.C. v. Callihan*, No. 2:11-cv-0355, 2012 WL 1377378, at *17 (W.D. Pa. April 29, 2012) (same); *Bradshaw v. Hilco Receivables, L.L.C.*, 765 F. Supp.2d 719, (D. Md. 2011) (same).  Therefore, MLP's seeking partial summary judgment as to liability only is no impediment to my granting its motion.

## III.  CONCLUSION

For the reasons discussed above, I conclude that plaintiff Anderson Brothers is collaterally estopped from relitigating the elements of defendant MLP's breach of contract counterclaim, and MLP has established its breach of contract counterclaim.  Accordingly, MLP's Partial Motion for Summary Judgment is **granted** on the issue of liability in connection with its counterclaim for breach of contract.  MLP's counterclaim for replevin of the press is dismissed as moot.

**IT IS SO ORDERED.**

**DATED**  this 24th day of August, 2012.

Mark W. Bennett

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA